Filed 10/20/25  P. v. Rodas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083671 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN423108) |
| BARTOLO LUCAS RODAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Michael D. Washington, Judge.  Affirmed.

Mario P. Tafur and Joshua J. Schroeder for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Bartolo Lucas Rodas appeals the judgment of conviction after a jury found him guilty of multiple counts of rape and attempting to dissuade witnesses.  He asserts claims regarding his right to testify, judicial bias, ineffective assistance of counsel, prosecutorial misconduct, insufficient

evidence, and sentencing error. We find no merit to his contentions and affirm.

I

BACKGROUND

A. *Prosecution Evidence*

I.R. is Rodas's eldest daughter. She was born in Guatemala on November 4, 1997. When I.R. was one year seven months old, Rodas and I.R.'s mother moved to the United States, leaving I.R. in the care of her maternal grandmother. For much of her childhood, I.R. believed her grandmother was her mother. Rodas visited I.R. in Guatemala around five times. I.R.'s mother never visited her.

In October 2012, one month before I.R. turned 16 years old, Rodas picked her up in Guatemala and moved her to the United States. After she moved to the United States, her parents limited her communication with her grandmother in Guatemala.

I.R. attended high school fulltime in Fallbrook. In addition to her schoolwork, she was expected to prepare Rodas's lunches, load his truck for work, prepare the family's dinners, clean the home, and do the laundry. When her parents were unhappy with the way I.R. performed these tasks, they would beat her. Her mother also beat I.R. when she did her schoolwork instead of the housework. In addition to the housework, I.R. cared for her younger sisters and went to work with Rodas on the weekends.

Rodas maintained tight control over I.R. and her activities. When she started working, Rodas demanded half of her paycheck. He also often checked her cell phone. If she refused to give him the phone, he would beat her. Rodas forbade I.R. from dating.

When I.R. was 16 years old, Rodas began sexually abusing her. One evening after he had been drinking and the other family members were asleep, he entered the bedroom I.R. shared with her sister, lay down next to her, and began touching her vagina and breasts under her clothes. I.R. confronted Rodas about the incident the next day. He asked her if she liked it and told her not to tell her mother or there would be problems. She did not tell anyone about what happened because she was afraid of being beaten and blamed. After this first incident, Rodas sexually abused I.R. every Friday after her mother went to bed.

Shortly before I.R. turned 17 years old, Rodas escalated the abuse and began touching her vagina with his penis. At that time, he would put his penis "in between and all around" the outer lips of her vagina. After she turned 17, he began inserting his penis further into her vagina and then would ejaculate on her. When she would tell him to stop, he would beat her.

I.R. met her boyfriend when she was 20 or 21 years old. She went to live with him in September 2020. Rodas demanded that I.R. continue to visit him regularly, and, if she did not, he would threaten her with physical violence and with telling her boyfriend she was seeing another man. During these visits, Rodas continued to sexually abuse her when her mother was not home. The sexual abuse occurred even when her boyfriend was in another room of the house, although Rodas never touched her with his penis on these occasions. During one visit, Rodas punched I.R. in the face in front of her boyfriend. On some occasions, Rodas took I.R. to a motel, where he raped her.

Early in April 2021, I.R. met Rodas the final time. He told her to meet him at a motel so they could talk about him leaving her alone. He told her to "do it one more time" or else he would not leave her alone. Then he raped

her. On April 12, Rodas told I.R. she had to see him, and, if she did not, he would tell her boyfriend she had another man. She told him to leave her alone, and she did not go see him. The conversation made her cry and want to kill herself because she had "had enough" of Rodas's threats.

After this final conversation with Rodas, I.R. told her boyfriend about the abuse. Her boyfriend called Rodas, and Rodas made threats of physical violence against I.R. and her boyfriend. Rodas told I.R. that if she reported him to law enforcement, he would kill her. Despite these threats, on April 17, 2021, I.R. reported the abuse to law enforcement.

Rodas raped I.R. more than once every year from the time she was 17 years old until she was 23 years old. She did not report the abuse because Rodas would threaten her and cause her fear.

The forensic interviewer who interviewed I.R. after she reported the abuse testified that children who are sexually abused often delay the disclosure of the abuse and that there are a number of reasons for this delayed disclosure.

B. *Defense Evidence*

I.R.'s mother, sister, half-brother, aunt, and uncle testified in Rodas's defense. The family members testified Rodas did not have a reputation for violence, and they did not witness him physically or sexually abuse I.R.

C. *Verdicts and Sentencing*

The jury found Rodas guilty of three counts of rape by force, violence, duress, menace, or fear of a minor 14 years of age or older (Pen. Code,[1] §§ 261, subd. (a)(2), 264, subd. (c)(2)); 12 counts of rape by force, violence, duress, menace, or fear (§ 261, subd. (a)(2)); and two counts of attempting to

---

[1]    All statutory references are to the Penal Code.

4

dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)). The jury also found true allegations that Rodas took advantage of a position of trust or confidence to commit the crime; I.R. was particularly vulnerable; and the offenses involved great violence, great bodily harm, the threat of bodily harm, or other facts disclosing a high degree of cruelty, viciousness, and/or callousness. Before Rodas's sentencing hearing, I.R. stated she thought an appropriate sentence for Rodas would be "probation up to a year in jail . . . ."[2] The trial court sentenced Rodas to 99 years in state prison.

## II

## DISCUSSION

A. *Potential Claims of Trial Court Error Are Forfeited*

First, Rodas presents issues he "preserved for appeal." He lists 15 instances in which he challenged the admission of evidence or testimony in the trial court. He also highlights the trial court's denial of his motion for acquittal as to the two counts of attempting to dissuade a witness, and his motion for pinpoint instructions regarding allegations as to the victim's vulnerability. As to some of these issues, Rodas states the trial court erred in its rulings, but, as to others, he argues the trial court correctly sustained defense objections. He also explains these issues are "intertwined with" his claims for relief, and thus, should be considered "in the contexts of each of [his] claims."

---

[2] Rodas requests judicial notice of a declaration from I.R., which requests leniency and Rodas's release from custody. He also seeks judicial notice of an excerpt from Daniel Kahneman's book *Thinking, Fast and Thinking Slow*, which defines rational thinking. We deny these requests. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."].)

To the extent Rodas intended to raise these issues as individual claims of trial court error, he has forfeited them by failing to clearly identify them by headings or supporting them with cogent analysis or authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 (*Freeman*) ["To the extent defendant perfunctorily asserts other claims, without development and, indeed, without a clear indication that they are intended to be discrete contentions, they are not properly made, and are rejected on that basis."]; *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 547 [" 'Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading.' "].)

However, to the extent these issues are relevant to Rodas's other claims, we address them *post*.[3]

B. *Rodas's Contention Regarding His Right to Testify Is Forfeited and Lacks Merit*

Rodas argues the trial court denied him his right to testify in his own defense. He contends neither defense counsel nor the court conferred with him about his right to testify, and he did not have an opportunity to assert

---

[3]     Throughout this section, and his opening brief generally, Rodas makes unsupported assertions of structural error. We do not consider these arguments that are void of authority or argument. (*Freeman, supra*, 8 Cal.4th at p. 482, fn. 2 [declining to consider arguments that are not sufficiently developed]; *People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5 (*Carroll*) [court need not consider constitutional argument void of analysis or authority].)

his right.[4]  Yet, he seems uncertain if this contention is accurate because he also states, "Unless I am mistaken and it is in the record at some point I did not catch, this is a fundamental violation . . . ."

But the record clearly shows Rodas's defense counsel advised him of his right to testify, and he waived that right.  An appellant must provide supporting citations to the factual record, and, if he fails to cite accurately to the record, he forfeits the issue or argument on appeal that is presented without the record reference.  (See Cal. Rules of Court, rule 8.204(a)(1)(C); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239.)  Rodas's misleading argument on this issue has rendered this claim forfeited.

Notwithstanding forfeiture, this claim also lacks merit.  Neither the state nor the federal Constitution place upon trial courts the duty to sua sponte inform a defendant of his right to testify, or to obtain an express waiver of that right.  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1052–1053.)  And Rodas conferred with his defense counsel about his right to testify.  We are not persuaded by Rodas's argument in his reply brief that his counsel advised him of his right only after the defense rested.  Although counsel did not discuss the matter on the record until after the defense rested, in doing so

---

4      Confusingly, Rodas presents this claim within the section of his opening brief addressing judicial bias but does not appear to contend the alleged violation of his right to testify resulted from judicial bias.  To the extent Rodas intended to present this argument in support of his judicial bias claim, it does no more to establish bias than the other examples discussed *post*.

he made clear that his discussion with Rodas about his right to testify occurred the previous day.[5]

C. *Rodas's Judicial Bias Claim Is Forfeited and Lacks Merit*

Rodas contends the trial judge was biased because of the crimes charged against him and his status as an immigrant. He does not contend the judge was deliberately biased, but instead, he suggests the judge acted out of implicit biases resulting from the *#MeToo* movement and national anti-immigrant sentiment.

1. *Rodas Has Forfeited His Judicial Bias Claim*

Rodas forfeited this judicial bias claim by failing to object on this ground at trial. Although Rodas objected to many perceived errors at trial, including the alleged errors he relies on here in an attempt to prove judicial bias, he did not object at any time to any perceived error on the ground of bias. (*People v. Johnson* (2018) 6 Cal.5th 541, 592 [defendant forfeited claim of judicial bias because he did not object to alleged errors in the trial court on the ground of bias and did not move to disqualify the judge].) Nevertheless,

---

[5] Rodas also argues in his reply brief that, even if counsel's discussion with Rodas about his right to counsel was sufficient, Rodas "did not understand the right he had or that he waived his right because he is not a native Spanish speaker–his first language is a Native Central American language that is difficult to find an adequate translator for, which is part and parcel of the ineffective assistance of counsel claims made in the AOB." Yet, Rodas was assisted by a Spanish language interpreter throughout trial with no objection, and he did not raise a language issue in his opening brief. We do not expressly address this argument raised for the first time in a reply brief on appeal. (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 ["A party may not raise an issue for the first time on appeal [citation], and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier."].) However, we note Rodas's argument is misleading. The record indicates he could read and write in Spanish; he wrote text messages to I.R. in Spanish; and he specifically requested a Spanish interpreter at trial.

despite Rodas's forfeiture, we also reach the merits of his judicial bias claim in light of his assertion that it would have been futile to object.

2. *Rodas Has Failed to Establish Judicial Bias*

Rodas has not shown the trial court committed any error, let alone error that resulted from judicial bias. He contends the trial court's bias was evidenced in five ways: (1) the court did not understand I.R. had a motive to fabricate her testimony because she sought to avoid criminal prosecution for incest; (2) it allowed the prosecutor to vouch for I.R.; (3) it failed to acknowledge its ability to show mercy by sentencing Rodas to probation or concurrent sentences; (4) it erroneously admitted expert testimony regarding delayed disclosure; and (5) it erroneously admitted evidence of text messages exchanged between Rodas and I.R. We address each of these claims in turn.

a. *Legal Standard*

A criminal defendant has a state and federal constitutional right to an impartial trial judge and to a trial conducted without the appearance of bias. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151; *Peters v. Kiff* (1972) 407 U.S. 493, 502.)

The party claiming bias bears the burden of presenting facts that clearly establish judicial bias. (*People v. Chatman* (2006) 38 Cal.4th 344, 363.) The appearance of bias is judged by the reasonable person test. (See *Evans v. Superior Court* (1930) 107 Cal.App. 372, 382.) The test is not whether the defendant "has proved harm, but whether the court's comments would cause a reasonable person to doubt the impartiality of the [court] or would cause us to lack confidence in the fairness of the proceedings such as would necessitate reversal." (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 461.) A " 'party's unilateral perception of an appearance of bias. . .' " is

9

insufficient, " 'unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals.' " (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1034.)  In addition, " '[a] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review. [Citations.] [¶] On appeal, we assess whether any judicial misconduct or bias was so prejudicial that it deprived defendant of ' " " 'a fair, as opposed to a perfect, trial.' " ' " (*People v. Pearson* (2013) 56 Cal.4th 393, 447.)

b. *I.R.'s Motive to Fabricate the Allegations of Sexual Abuse*

As to Rodas's first proposed illustration of the trial court's bias, he appears to allude to the trial court's comments in support of imposing an aggravated sentence.  Specifically, the trial court imposed an aggravated term in reliance on the factual findings made by the jury, and, in doing so, explained, "I have reason to believe [I.R.] because I can't think of any advantage that she would have in coming to court and making false allegations against her father."  That the trial court concluded I.R. lacked a sufficient motive to make false allegations against Rodas does not prove the trial court failed to appreciate that I.R. could have fabricated the allegations to avoid being charged with incest.  Rather, it means the trial court found I.R.'s allegations of abuse credible, and thus, necessarily found she did not engage in unlawful incest.  That the trial court may not have considered a motivation for fabrication that did not exist does not suggest the court was biased.

c. *Vouching for I.R.*

Rodas's second proposed example of the trial court's bias–that it allegedly allowed the prosecutor to vouch for I.R.'s credibility–is not

10

supported by the record. As explained *post* with respect to Rodas's claim of prosecutorial misconduct, he has not shown the prosecutor engaged in any improper vouching. Because there was no vouching, the trial court could not have allowed vouching due to bias.

### d. *Sentencing Discretion*

As to Rodas's suggestion that the trial court acted out of bias in failing to sentence Rodas to probation or concurrent sentences, he has shown no error, let alone error that resulted from judicial bias. As explained *post*, Rodas was statutorily ineligible for probation, and the trial court properly imposed consecutive sentences for separate offenses. Rodas has not provided any basis on which we could find the trial court imposed this proper sentence as the result of bias.

### e. *Evidence of Delayed Disclosure*

To the extent Rodas argues the trial court exhibited bias by erroneously admitting expert testimony regarding delayed disclosure, again he fails to establish any error, let alone error resulting from judicial bias.

At trial, the defense cross-examined I.R. about her failure to disclose the sexual abuse to counselors who questioned her about her accusations of physical abuse in the home. Following her testimony, the prosecutor sought the trial court's ruling on the admissibility of expert testimony from licensed clinical social worker Christina Shultz on the issue of delayed disclosure of child sex abuse victims. The court ruled Shultz could "testify broadly to the issue of delayed reporting by . . . child victims of sexual abuse," and that any additional testimony would have to be admissible rebuttal.

Schulz testified as to the characteristics of child sexual abuse and related delayed disclosure, as well as the protocol for interviewing a potential child victim of sexual abuse. Schulz explained "the vast majority of

11

individual children who have been abused do not tell right away," a phenomenon that has been substantiated by research and Schulz's own practice. She offered reasons as to why victims might delay disclosure. Schulz further testified that the perpetrator of child sexual abuse is typically known to the victim, and, when the perpetrator is a stranger, the victim is more likely to immediately disclose the abuse. She explained that many child victims of sexual abuse reported abuse occurring while another family member was in the home. Throughout Shulz's testimony, the trial court sustained numerous defense objections and cautioned the prosecutor to remain within the scope of the court's ruling on the admissibility of the testimony.

The trial court properly admitted this evidence. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301; see also *People v. Page* (Sept. 30, 2025, D084545) ___Cal.App.5th ___ [2025 WL 2787609, at *6].) Thus, Rodas cannot show the court exhibited bias by erroneously admitting Schulz's testimony. This is particularly true where the court repeatedly sustained defense objections to improper questions and cautioned the prosecutor about exceeding the scope of admissibility.

### f. *Text Messages*

Lastly, Rodas has not shown judicial bias resulted in any error with respect to the admission of evidence of text messages exchanged between Rodas and I.R.

Before trial, the defense moved in limine to exclude evidence of text messages sent between Rodas and I.R. for a lack of foundation and on hearsay grounds. The trial court held a hearing pursuant to Evidence Code section 402 to determine the existence of the proper foundation for admitting the text messages. At the hearing, the District Attorney investigator who

12

reviewed the logs of the extraction of the text messages from I.R.'s cell phone testified. After the hearing, the court found the messages generally admissible, subject to individual objections.

Thereafter, I.R. testified regarding the text messages. In the messages I.R. sent to Rodas, I.R. asked Rodas for forgiveness for failing him and making mistakes, admitted having lied about unspecified things, and insisted she had not fabricated her allegations of sexual abuse. In the messages Rodas sent to I.R., he insulted her, used profanity against her, and admitted having threatened her. In other messages, Rodas asked for I.R.'s forgiveness and stated "a spell. . . made [him] do it."

At the beginning of I.R.'s testimony about the messages, Rodas lodged general foundation, hearsay, and speculation objections, which the court overruled. Thereafter, Rodas lodged a handful of objections to the admission of the content of the messages, one successfully objecting to the prosecutor simply reading a message, three unsuccessfully objecting to the prosecutor reading portions of the messages as part of a question, and one objecting when the prosecutor misquoted a message.

Here, Rodas appears to argue that the trial court should have excluded the text messages based on foundation, hearsay, and speculation objections, and that this failure to do so demonstrates judicial bias. He does not identify any individual messages that were allegedly inadmissible on these grounds, and thus, appears to argue the messages were inadmissible as a whole. However, the only objection Rodas proposes that we can consider with respect to the text messages generally, rather than as applied to individual messages, is the foundation objection. But the trial court did not abuse its discretion in finding the appropriate foundation for the text messages because it admitted them after the investigator who reviewed the extraction

13

log laid a proper foundation, and after I.R. identified the text messages. (*People v. Goldsmith* (2014) 59 Cal. 4th 258, 266, 267 [admissibility of evidence reviewed for abuse of discretion; foundational requirement met if "sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered"].)[6] Rodas cannot establish judicial bias based on the erroneous admission of the text messages where the trial court properly admitted the evidence.

Ultimately, none of the five examples of judicial bias Rodas has presented establish trial court error, and thus, Rodas has failed to show judicial bias based on these alleged errors. Even if Rodas had established the trial court erred in some way, he has not shown that any error was the result of bias. Error alone is insufficient to establish judicial bias in the absence of any showing that the error resulted from the bias alleged. (*People v. Pearson*, *supra*, 56 Cal.4th at p. 447.) In fact, "[Rodas]'s willingness to let the entire trial pass without articulating an appropriate objection 'strongly suggests' his claim [of judicial bias] is without merit." (*People v. Johnson*, *supra*, 6 Cal.5th at p. 592.)

D. *Ineffective Assistance of Counsel*

Next, Rodas asserts his trial counsel was ineffective for failing to properly oppose certain evidence and testimony, and for failing to counter the prosecution's mischaracterization of evidence.

---

6　Rodas also suggests the prosecution engaged in a nefarious plan to give I.R. a cell phone through which she could collect unflattering or incriminating text messages from Rodas. I.R. testified that, when she was 18 years old, she had a cell phone that she got for free from the government. But I.R. did not report the sexual abuse until April 17, 2021, when she was 23 years old. The prosecution team could not have provided I.R. with any phone she possessed at the age of 18.

1. *Standard of Review*

A criminal defendant has a constitutional right to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684–685.) "It is defendant's burden to demonstrate the inadequacy of trial counsel." (*People v. Lucas* (1995) 12 Cal.4th 415, 436.) To establish ineffective assistance of counsel, "the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) An insufficient showing on either one of these components is fatal to an ineffective assistance of counsel claim. (*Strickland*, at p. 687.) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Id*. at p. 697.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.)

2. *Failure to Object to Testimony and Evidence*

First, Rodas argues his defense counsel was ineffective for failing to object to, or oppose, evidence of Rodas's control over I.R., evidence regarding I.R.'s credibility, and a statement by I.R.'s mother.  We reject these arguments.

a. *Evidence of Rodas's Dominance and Control Over I.R.*

Rodas contends his counsel was ineffective for failing to challenge the introduction of evidence that he alleges the prosecution improperly used to suggest Rodas exercised dominance and control over I.R..  First, he argues counsel should have sought to exclude evidence that Rodas facilitated I.R.'s lawful immigration to the United States because this was merely evidence of Rodas exercising his ordinary custodial rights over his child.  Relatedly, he argues his defense counsel was ineffective for failing to object to evidence that Rodas expected I.R. to do household chores and submit to his rules regarding her phone use and dating.  Rodas further contends his counsel should have objected to evidence that I.R.'s mother beat her.

The prosecution did not merely present innocuous evidence of ordinary parental supervision.  Through evidence showing Rodas required I.R. to do chores and submit to his rules, the prosecution painted a picture of a teenage girl who was brought to a new country against her wishes to live with parents she barely knew, made to perform the household chores to her parents' standards or risk physical beatings, and given almost no autonomy over herself.  This evidence was highly relevant to the prosecution's theory that Rodas committed the charged rapes by means of force, violence, duress, menace, or fear.  (See § 261, subd. (b)(1) [" '[d]uress' means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a

16

reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted," and " '[m]enace' means any threat, declaration, or act that shows an intention to inflict an injury upon another"].)  In addition, the prosecution presented evidence that Rodas's control over I.R. continued even after she became an adult, and thus, cannot be deemed mere acts of ordinary parental authority.

Rodas cannot establish ineffective assistance based on counsel's failure to lodge a meritless objection to this relevant and admissible evidence. (*People v. Cudjo* (1993) 6 Cal.4th 585, 616 ["Because there was no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance."].)

b. *Evidence Related to I.R.'s Credibility and Character*

Rodas further challenges his counsel's failure to object to I.R.'s inconsistent testimony as being nonresponsive and contradictory.  In addition, he argues his counsel should have objected to, and moved to strike, inflammatory statements that presented I.R. in a sympathetic or morally superior light, such as her text messages admitting to lying, being stupid, loving her father, and being a sinner.  Relatedly, Rodas argues his defense counsel was ineffective for failing to object to many of the questions eliciting this contradictory testimony from I.R. on the ground they were already asked and answered.[7]

---

[7]     Rodas also makes a passing reference to questions the prosecutor posed to I.R.'s boyfriend that had been asked and answered, but he does not accompany the reference with any context or argument.  We do not separately address this undeveloped argument.  (*Freeman*, *supra*, 8 Cal.4th at p. 482, fn. 2 [declining to consider arguments that are not sufficiently developed].)

Regardless of whether Rodas's counsel might have had legitimate bases on which to object to the evidence, he used the evidence to the benefit of the defense by arguing I.R. was not credible and fabricated the allegations against Rodas. Counsel could have made a reasonable tactical decision not to object to the evidence so he could use it to impeach I.R.'s credibility. In fact, even here, Rodas uses I.R.'s contradictory statements and testimony to argue the evidence was insufficient to support Rodas's convictions. Because the record does not affirmatively demonstrate Rodas's counsel lacked a rational tactical purpose for declining to object to the evidence in question, we cannot find he was ineffective. (*People v. Brand* (2021) 59 Cal.App.5th 861, 872–873.)

### c. *Statement by I.R.'s Mother*

Next, Rodas challenges his counsel's failure to object to testimony about a statement I.R.'s mother made. I.R.'s boyfriend testified that, after I.R. disclosed the abuse to him, he called I.R.'s mother and informed her. I.R.'s sister, L.R., then testified that, after I.R.'s boyfriend called her mother, her mother told Rodas she "didn't think [he] would do something like that to [I.R.]." L.R. further testified that, in response to her mother's statement, Rodas said nothing, put the palm of his hand on his forehead, and looked down.

Rodas faults his counsel for failing to object to this statement as "unclear," or vague, because it could have been referring to "beatings, incest, holding onto [I.R.]'s green card, precluding [I.R.] from dating [her boyfriend] or moving out, breaking [I.R.]'s phone, telling [I.R.] that her car is actually his, giving [I.R.] money and then demanding it back, refusing to allow [I.R.] to move out and treating her like property that can be sold to [her boyfriend] for marriage, and any number of things discussed at trial here." But the

18

record leaves no ambiguity that the subject of the statement at issue was Rodas's sexual abuse of I.R., as I.R.'s boyfriend disclosed the abuse to her mother immediately before she made the statement at issue. Because neither the question nor the answer was vague, Rodas's counsel had no meritorious basis upon which to object. Counsel was not ineffective for failing to lodge a meritless objection. (*People v. Cudjo*, *supra*, 6 Cal.4th at p. 616.)

3. *Failure to Object to Prosecutor's Mischaracterization of Evidence*

Lastly, Rodas argues his counsel was ineffective for failing to counter the prosecution's misrepresentation of the threats Rodas made that formed the basis for the charges of attempting to dissuade a witness. His claim is premised on testimony from I.R. and her boyfriend that Rodas threatened them both with physical harm and/or death if they disclosed the abuse. Rather than showing the prosecutor misrepresented the nature of the threats Rodas made against I.R. and her boyfriend, Rodas's true complaint seems to be that I.R. gave conflicting testimony about the threats. Again, however, Rodas's counsel attempted to use I.R.'s contradictory testimony to Rodas's advantage by arguing I.R. was an unreliable witness who fabricated the allegations against Rodas. In the absence of an affirmative demonstration in the record that Rodas's counsel lacked a rational tactical purpose for declining to object to the evidence in question, we cannot find he was ineffective. (*People v. Cash* (2002) 28 Cal.4th 703, 734.)[8]

---

[8] In passing, Rodas appears to suggest the trial court erred by denying his motion for judgment of acquittal under section 1118.1 based on the allegedly contradictory evidence. Again, we do not address Rodas's vague and unsupported argument. (*Freeman*, *supra*, 8 Cal.4th at p. 482, fn. 2.)

19

E. *Prosecutorial Misconduct*

Rodas's next claim of error is that the prosecutor committed misconduct by making comments during her opening statement, which Rodas characterizes as relying on inadmissible hearsay, invoking defenses Rodas did not have to raise, and relying on evidence the prosecutor was unable to produce at trial. He also contends the prosecutor improperly vouched for evidence and witnesses, presented inflammatory and prejudicial evidence, directing the jury, and "[e]quivocated" between the cultures of the United States and Guatemala.

1. *Standard of Review*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Under the federal standard, prosecutorial misconduct requires reversal of a judgment unless the misconduct was harmless beyond a reasonable doubt. (*People v. Castillo* (2008) 168 Cal.App.4th 364, 386–387, fn. 9 (*Castillo*); *People v. Bordelon* (2008) 162 Cal.App.4th 1311, 1323–1324.) Under the state standard, prosecutorial misconduct requires reversal where it is reasonably probable the defendant would have obtained a more favorable verdict absent the misconduct. (*People v. Crew* (2003) 31 Cal.4th 822, 839; *Castillo*, at p. 386.)

2. *Forfeiture*

Except for an issue regarding the scope of expert testimony, Rodas did not object in the trial court to any of the alleged acts of prosecutorial misconduct, and a sustained objection and/or admonition would have cured any potential prejudice resulting from the prosecutor's alleged improper comments during her opening statement, vouching for witnesses, presentation of inflammatory or prejudicial evidence, and directing the jury. Because he did not object to alleged errors that could have been cured by the trial court, Rodas forfeited all of his assertions of prosecutorial misconduct, except for that related to the scope of the expert testimony. (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

However, in light of Rodas's argument that it had been "impossible" or futile to object, as explained *post*, we also find he has not established prosecutorial misconduct.

3. *Opening Statement*

Rodas first cites a multitude of allegedly improper comments by the prosecutor during her opening statement, which Rodas characterizes as relying on inadmissible hearsay, invoking defenses Rodas did not have to raise, and relying on evidence the prosecutor was unable to produce at trial.

As identified by Rodas, the prosecutor referred to the following evidence: (1) Rodas's statements suggesting I.R. consented to the sexual relationship; (2) Rodas's threats to I.R. and her boyfriend; (3) Rodas's statement that she had become a woman and "c[ould] handle this"; (4) Rodas's disparaging comments to I.R.; (5) I.R.'s disclosure of the abuse to her boyfriend; (6) statements I.R.'s boyfriend made to Rodas after learning of the abuse; (7) Rodas's statement that he had been "wrong all these years"; (8) I.R.'s admission that she had sinned; and (9) thoughts the prosecutor attributed to I.R. and her boyfriend. The first eight categories involve

21

evidence that fell within exceptions to the hearsay rule or was admissible for nonhearsay purposes. (Evid. Code, §§ 1220 [admission by a party opponent], 1221 [adoptive admission], 1236 [witness's prior consistent statement], 1238 [witness's prior identification], 1250 [declarant's state of mind]; *People v. Castro* (1979) 99 Cal.App.3d 191, 200, fn. 6 ["The testimony. . . concerning various threats . . . was not admitted for the truth of the matter stated, but only to show that threats had been made. The testimony was not hearsay."]; *People v. Waidla* (2000) 22 Cal.4th 690, 723 [victim's statements indicating fear of defendants were relevant to prove lack of consent].) As to the final category, this was not a reference to actual statements made, but rather, was the prosecutor hypothesizing what I.R. and her boyfriend might have been thinking, which amounted to making reasonable inferences from the evidence. (*People v. Camacho* (2022) 14 Cal.5th 77, 126 [prosecutor may argue reasonable inferences from the record].)

Second, we reject Rodas's argument that the prosecutor improperly referenced the issue of consent and, thereby, invoked Rodas's defenses. Rodas's argument seems to be focused on the prosecutor's reference to text messages related to the issue of I.R.'s consent to the sexual relationship. But Rodas does not argue that the prosecutor mischaracterized this evidence or that it was so inflammatory as to have prejudiced the jury. He merely argues the statements were hearsay and placed the defense in a difficult strategic position. However, as stated, the prosecutor did not erroneously refer to inadmissible hearsay evidence, so Rodas cannot show she committed misconduct by knowingly referring to patently inadmissible evidence. (See *People v. Dykes* (2009) 46 Cal.4th 731, 762 [" '[R]emarks made in an opening statement cannot be charged as misconduct unless the evidence referred to by the prosecutor "was 'so patently inadmissible as to charge the prosecutor with

22

knowledge that it could never be admitted.' " ' "].) And the fact that the substantial incriminating evidence against Rodas made it difficult to craft a defense is not proof of prosecutorial misconduct.

Third, Rodas argues the prosecutor referred to statements that differed from the evidence ultimately admitted at trial, or that the prosecutor could not prove at trial. However, in light of the trial court's instruction to the jury that the lawyers' statements were not evidence, "any minor variance in the evidence actually presented could not be so prejudicial or egregious as to warrant reversal." (*People v. Dennis* (1998) 17 Cal.4th 468, 519.)

4. *Vouching*

Next, Rodas contends the prosecutor engaged in improper vouching by: (1) suggesting I.R. could not remember the exact number of times she was raped because of the overall frequency of acts; (2) arguing I.R.'s household responsibilities created a coercive environment; (3) presenting the text messages between I.R. and Rodas; (4) admitting I.R.'s mother's statement that she did not think Rodas would do something like this to I.R.; and (5) suggesting I.R. wanted a healthy relationship with her boyfriend and a normal relationship with Rodas, when she did not.

"A prosecutor may make 'assurances regarding the apparent honesty or reliability of' a witness 'based on the "facts of [the] record and the inferences reasonably drawn therefrom." ' [Citation.] But a 'prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.' " (*People v. Turner* (2004) 34 Cal.4th 406, 432–433.) " 'Improper vouching occurs when the prosecutor either (1) suggests that evidence not available to the jury supports the argument, or (2) invokes his or her personal prestige or

depth of experience, or the prestige or reputation of the office, in support of the argument.' " (*People v. Rodriguez* (2020) 9 Cal.5th 474, 480.)

Rodas does not explain how any of the prosecutor's statements or arguments amounted to improper vouching. Specifically, Rodas does not point to any instance in which the prosecutor attempted to bolster the credibility of a witness or evidence by referring to evidence outside the record, or by invoking the prosecutor's prestige or experience. Rather, Rodas takes issue with the prosecutor's proper argument regarding logical inferences flowing from the evidence presented at trial. (*Turner*, *supra*, 34 Cal.4th at 432–433 [prosecutor may make assurances regarding honesty based on reasonable inferences from the record but may not bolster credibility based on evidence outside record].)

5. *Inflammatory and Prejudicial Evidence*

Next, Rodas argues the prosecutor admitted inflammatory and prejudicial evidence and argument regarding: (1) Rodas's specific placement of his penis in relation to I.R.'s vagina; (2) Rodas's threats against I.R.; (3) the text messages between I.R. and Rodas, and whether Rodas "in fact" made the statements reflected in the texts; (4) I.R.'s immigration to the United States; (5) Rodas's disparaging comments about I.R.; (6) I.R.'s household obligations; (7) Rodas's lack of consent to I.R.'s relationship with her boyfriend; and (8) I.R.'s consent to sexual acts with Rodas. He also faults the prosecutor for "[e]quivocat[ing]" between the cultures of the United States and Guatemala by referring to the defense characterization of I.R.'s decision to move in with her boyfriend "as some kind of romantic elopement."

Prosecutors are not required to discuss crimes "dispassionately or with philosophic detachment," but may not present " ' " 'irrelevant information or inflammatory rhetoric that diverts the jury's attention from its proper role, or

24

invites an irrational, purely subjective response.' " ' " (*People v. Leon* (2015) 61 Cal.4th 569, 605–606.)  It is not misconduct for a prosecutor to make "vigorous" arguments that are "tied to specific evidence" and the prosecution's theory.  (*Ibid*.)  Each example Rodas cites was specifically tied to evidence and relevant to prove the elements of the crimes charged, i.e. penetration and force, fear, or duress for purposes of forcible rape (§ 261, subd. (a)(2)), and witness intimidation (§ 136.1, subd. (b)(1)). Rodas has not shown that any of the evidence or argument cited was so prejudicial or inflammatory as to amount to misconduct.

6. *Expert Testimony*

Rodas also asserts the prosecutor committed misconduct by suggesting the expert on delayed disclosure was a neutral and objective witness, and by eliciting testimony from the expert that was beyond the scope of what the trial court ruled was admissible.

a. *Expert's Neutrality*

In support of his assertion that the prosecutor improperly suggested the expert was neutral and objective, Rodas cites to certain pages of the reporter's transcript as containing the prosecutor's misconduct.  Rodas's citations refer to the expert's testimony that she did not work for law enforcement, was a neutral party that conducted forensic interviews at the request of an investigative agency, and the agencies pay a fee to her facility for the interviews.  However, these citations fall within the defense's cross-examination of the expert witness, and thus, any questioning and elicited responses cannot be attributed to the prosecutor.  Although Rodas cites to the prosecution's statement during closing argument that the expert was "unbiased" because "[s]he is not a branch of law enforcement" and "doesn't have any say in whether charges are brought . . . ," the prosecutor's argument

25

made an entirely permissible inference from the testimony elicited by the defense at trial.  (*People v. Turner*, *supra*, 34 Cal.4th at pp. 432–433.)

       b.  *Scope of Testimony*

"Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct."  (*People v. Scott* (1997) 15 Cal.4th 1188, 1218.)

Here, after eliciting the expert's testimony on delayed disclosure, the prosecutor began to expand on the expert's testimony by asking if the abuser is typically someone known to the victim, and confirming it is common for sexual abuse to occur in the victim's home.  When the prosecutor asked if it is possible for abuse to occur in the home without the knowledge of other family members, the defense objected to the question as being beyond the scope of the trial court's ruling on admissibility.  The court sustained the objection.  The prosecutor then asked if victims of sex abuse typically show outward signs of abuse, and the court again sustained a defense objection as being beyond the scope.  The court called a sidebar, at which the prosecutor explained why she believed her questioning was permissible based on the court's ruling and the expert's testimony to that point.  The court reminded the prosecutor of its limitation on the admissibility of the expert's testimony, stated the prosecutor could not expand the testimony, and cautioned it would sustain any additional defense objections on this basis.  The court noted that it largely understood why the prosecutor had framed her questions the way she had up to that point, but explained the prosecutor had then reached a point where her questions sought testimony that was beyond the scope of the court's ruling on admissibility.

On this record, Rodas has not shown the prosecutor was intentionally trying to elicit testimony she knew to be inadmissible rather than seeking to

26

expand the testimony in a way she believed to be permissible but was ultimately foreclosed by the trial court. Regardless, to the extent the prosecutor attempted to elicit testimony that was beyond the scope of the trial court's ruling on admissibility, the trial court kept tight boundaries on the prosecutor's questioning. Thus, the record demonstrates the trial court took appropriate action to prevent any prejudice, and there is no reasonable probability that any misconduct could have affected the verdict. (See *People v. Barrett* (2025) 17 Cal.5th 897, 980 [no risk of prejudice from prosecutor's allegedly improper question where trial court sustained objection and witness did not answer]; *People v. Dykes*, *supra*, 46 Cal.4th at p. 764.)

7. *Directing Jury*

Rodas finally contends the prosecutor engaged in misconduct by directing the jury it was required to make findings, even though the jury was permitted to decline to reach a verdict. Specifically, Rodas faults the prosecutor's explanation to the jury it could find Rodas accomplished the rape by fear but, to do so, it "ha[d] to find that [I.R.] was actually and reasonably afraid of her father." He also contends it was improper for the prosecutor to inform the jury it "ha[d] to make a finding" as to the first three counts of forcible rape, and, "[o]nce [the jury] f[ou]nd the defendant guilty of forcible rape, [it] ha[d] to make a finding about whether it was committed when [I.R.] was under 18 and over 14."

The prosecutor's comments accurately informed the jury of the findings required for each offense, pursuant to the trial court's jury instructions. Specifically, the trial court instructed the jury that, to find Rodas guilty of rape by fear, it had to find "the woman is actually and reasonably afraid . . . ." In addition, the trial court instructed the jury that, if it found Rodas guilty of rape as charged in counts one through three, it "must then decide whether

27

the People have proved the additional allegation that those crimes were committed upon" a victim between the ages of 14 and 18 years old. It is not misconduct to accurately define the elements of the crimes charged (*People v. Williams* (1997) 16 Cal.4th 153, 223–224), or to urge jurors to reach a verdict (*People v. Pitts* (1990) 223 Cal.App.3d 606, 696). And, although " 'the trial court has a duty to avoid coercing the jury to reach a verdict" (*People v. Peoples* (2016) 62 Cal.4th 718, 782), Rodas has not shown that such coercion took place here, either by the court or the prosecutor.

But even if the prosecutor's argument suggested to the jury it had to reach a verdict, the trial court cured any error through its instructions to the jury. Specifically, the trial court instructed the jury that the statements of the lawyers were not evidence; it was to disregard any statement by a lawyer that contradicted the instructions issued by the court; it "should try to agree on a verdict" if it could; and it could only convict Rodas on any count if it found him guilty beyond a reasonable doubt. (*People v. Morales* (2001) 25 Cal.4th 34, 47 [any mischaracterization of the law during closing argument was cured by instructions to the jury].)

F. *Insufficient Evidence*

Rodas next challenges the sufficiency of the evidence to support his convictions.

In reviewing a due process challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—i.e., evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Hin* (2025) 17 Cal.5th 401, 455.) In conducting such a review, a reviewing court does not " 'ask itself whether *it* believes that

28

the evidence at the trial established guilt,' " but rather, asks whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.) We presume the existence of every fact the jury reasonably could deduce from the evidence (*People v. Kraft* (2000) 23 Cal.4th 978, 1053), and "discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity" (*People v. Moore* (2010) 187 Cal.App.4th 937, 940). "[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the jury. It is of no consequence that the jury believing other evidence, or drawing different inferences, might have reached a contrary conclusion." (*People v. Brown* (1984) 150 Cal.App.3d 968, 970.)

Rather than arguing the evidence was insufficient to prove any element of any crime of which Rodas was charged, he simply argues prosecution witnesses, and I.R. in particular, gave inconsistent testimony that lacked credibility or was otherwise contradicted. Rodas merely invites us to reweigh the evidence presented against him at trial and interpret it in his favor. This we cannot do. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079–1080 [" ' "We do not reweigh evidence or reevaluate a witness's credibility." [Citations.] "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." ' "].)

To the extent Rodas offers any permissible challenge to the evidence underlying any of his convictions, he appears to argue the evidence was insufficient to prove count one, Rodas's first rape of I.R., which allegedly happened when she was 16 years old. Rodas seemingly points to the fact that I.R. testified Rodas raped her for the first time when she was 17 years old. It is true that, at times, I.R. testified the first rape occurred after she turned 17.

29

But she also testified that this act occurred when she was 16 and one half, "around 17," and just before her 17th birthday. It was up to the jury, not this court on appellate review, to resolve this conflict. Because two reasonable inferences could be deduced from I.R.'s testimony, i.e. that she was either 16 or 17 years old when Rodas first raped her, we cannot draw a conclusion contrary to that which the jury drew. (*People v. Brown*, *supra*, 150 Cal.App.3d at p. 970.)

G. *Sentencing*

Finally, Rodas argues the trial court should have sentenced him to probation or ordered his sentences to run concurrently. He relies heavily on the fact that I.R. stated she would be satisfied if Rodas received a sentence of probation or up to a year in jail.

As to a sentence of probation, Rodas was statutorily ineligible. "[P]robation shall not be granted to" a defendant convicted of violating section 261, subdivision (a)(2), as Rodas was here. (§ 1203.065, subd. (a).) Contrary to Rodas's argument, subdivision (b) of section 1203.065, which contemplates a grant of probation "in unusual cases," only applies to defendants convicted of an offense enumerated in that provision, which does not include a conviction under section 261, subdivision (a)(2). (*Id.* at subd. (b)(1) [contemplating a sentence of probation in "unusual cases" where the defendant was convicted under §§ 220, 261, subd. (a)(7), 286, subd. (k), 287, subd. (k), 288a, or 289, subd. (g)].)

Rodas's argument that he should have received concurrent sentences under section 667, subdivision (c) is patently meritless. The evidence did not show, as Rodas would have us find, that he committed "a long, continuous act of rape" over the course of some six plus years. Rather, the evidence showed Rodas sexually assaulted I.R. on numerous discreet occasions. In fact, I.R.'s

testimony, which the jury necessarily credited, established that Rodas assaulted I.R. every Friday for an extended period.[9]

## DISPOSITION

The judgment is affirmed.

IRION, Acting P. J.

WE CONCUR:

DATO, J.

DO, J.

---

[9] In a single conclusory sentence, Rodas also argues that his sentence "was cruel and unusual especially taking into account [his] lack of a criminal history." We do not address this undeveloped argument. (*Carroll*, *supra*, 222 Cal.App.4th at p. 1412, fn. 5 [court need not consider constitutional argument void of analysis or authority].)